| | | |
|---|---|---|
| MURRAY I. WELLNER, M.D., P.C., and HARRY HAMEROFF, M.D., Individually and on behalf of those similarly situated,, | : : : : : : | Case No. 1:16-cv-05320 Case No. 1:13-cv-05795 |
| Plaintiff, | : : | |
| v. | : : | MDL No. 2455 |
| STERICYCLE, INC., | : : : | Judge Milton I. Shadur |
| Defendant. | : : | |

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO CLASS ACTION COMPLAINT OF PLAINTIFFS MURRAY I. WELLNER, M.D., AND HARRY HAMEROFF, M.D.

Stericycle, Inc. ("Stericycle"), by and through its counsel, hereby answers Plaintiffs' Complaint ("the Complaint") as follows:

1. Plaintiffs on behalf of themselves and all other similarly situated customers that contracted with Defendant to provide medical and bio-hazardous waste disposal and related services brings this class-action lawsuit against Defendant Stericycle, Inc. ("Defendant" or "Stericycle"), because it systematically charged their fees unlawfully.

ANSWER TO NO. 1:  Stericycle admits that Plaintiffs purport to bring this action as a class action to seek judicial relief against Stericycle. Stericycle denies the remaining allegations in paragraph 1.

2. Defendant's primary business consists of collecting and disposing of medical and bio-hazardous waste for its customers. Defendant serves hospitals, laboratories, physician practices, dental clinics, long-term care facilities, blood banks, veterinarians, and other organizations that generate medical waste or other potentially infectious material. Stericycle's

regulated waste services share a common infrastructure and customer base, and it maintains contractual relationships in all the markets in which it operates. The contract it entered into with Plaintiffs and the Class Members are standardized forms containing standardized terms and providing that the forms be governed by Illinois law.

ANSWER TO NO. 2:  Stericycle admits that its business includes collecting and disposing of medical waste for customers who include those described in paragraph 2. Stericycle admits that it has contractual relationships with its customers. Stericycle denies the remaining allegations in paragraph 2.

3.      As set forth below, Defendant has routinely charged Plaintiffs and similarly situated customers automatic price increases (referred to herein as "APIs") and a variety of associated fees and costs that were not authorized by any agreement of the parries.

ANSWER TO NO. 3:  Stericycle denies the allegations in paragraph 3.

4.      Plaintiff Murray I. Wellner, M.D., P.C. is a Connecticut Professional Medical Corporation engaged in the practice of medicine in order to optimize the wellness and good health for its patients. It has its principal place of business located at 10 Dale St., West Hartford, CT 06107.

ANSWER TO NO. 4:  Stericycle admits that Plaintiff Murray I. Wellner has a place of business at 10 Dale Street, West Hartford, Connecticut, 06107. Stericycle is without knowledge or information to answer the remaining allegations in paragraph 4 and therefore denies the same.

5.      Plaintiff Harvey Hamerhoff, M.D. is a doctor that works for the wellness and good health for his patients. Dr. Hamerhoff resides in the State of Connecticut and has an office located at 10 Dale Street, West Hartford, CT 06107.

ANSWER TO NO. 5: Stericycle admits that Plaintiff Harvey Hameroff is a medical doctor with an office located at 10 Dale Street, West Hartford, Connecticut, 06107. Stericycle is without knowledge or information to answer the remaining allegations in paragraph 5 and therefore denies the same.

6.     Defendant Stericycle, Inc., is a Delaware corporation with its principle [sic] place of business located in Illinois, at 28161 North Keith Drive, Lake Forest, IL 60045. Defendant is registered to do business in the State of Connecticut. Defendant can be served with a copy of the Complaint and Summons by and through its Registered Agent, CT Corporation Systems, One Corporate Center, Hartford, CT.

ANSWER TO NO. 6: Stericycle admits the allegations in paragraph 6.

7.     Defendant has extensive business operations across the country, including Connecticut. Defendant has representatives, facilities and equipment in and throughout the State of Connecticut.

ANSWER TO NO. 7: Stericycle admits the allegations in paragraph 7.

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 in damages exclusive of interest and costs, and Plaintiffs, as well as most members of the proposed class, are citizens of a state different from the state of Defendant.

ANSWER TO NO. 8: Stericycle admits the allegations in paragraph 8.

9.     This Court has personal jurisdiction over Defendant based on its extensive contracts with Connecticut businesses. Defendant offers, advertises, and forms contracts in Connecticut. Defendant does extensive business in the State of Connecticut.

ANSWER TO NO. 9:  Stericycle avers that venue is appropriate in the Northern District of Illinois, to which this case was recently transferred for inclusion in the *In re Stericycle, Inc., Steri-Safe Contract Litigation*, MDL No. 2455, consolidated proceedings. Stericycle denies the remaining allegations in paragraph 9.

10.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims occurred in Complaint, and since the contracts at issue were advertised, offered, sold and executed in this venue and related to hazardous waste disposal services to be rendered in this venue, pursuant to Connecticut and Federal law. Plaintiffs reside in this venue and entered into the Standard Contract in Connecticut for services to be provided in Connecticut.

ANSWER TO NO. 10:  Stericycle avers that venue is appropriate in the Northern District of Illinois, to which this case was recently transferred for inclusion in the *In re Stericycle, Inc., Steri-Safe Contract Litigation*, MDL No. 2455, consolidated proceedings. Stericycle denies the remaining allegations in paragraph 10.

11.     Regulated waste is generally any medical waste that can cause an infectious disease and includes: single-use disposable items, such as needles, syringes, gloves and other medical supplies; cultures and stocks of infectious agents; blood and blood products; hazardous waste; and regulated pharmaceutical waste, which consists of expired or recalled pharmaceuticals.

ANSWER TO NO. 11:  The allegations in paragraph 11 are legal conclusions to which no response is required; to the extent a response is required, Stericycle denies the allegations in paragraph 11.

4812-7932-0625 v1

12. Plaintiffs and Class Members are hospitals, laboratories, physician practices, dental clinics, long-term care facilities, blood banks, veterinarians, and other organizations that generate medical waste or other potentially infectious material

ANSWER TO NO. 12: Stericycle admits that Plaintiffs are physicians. Stericycle denies the remaining allegations in paragraph 12 based on lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

13. The Medical Waste Tracking Act of 1988 ("MWTA") and certain Environmental Protection Agency rules promulgated under that act established a regulatory regime that governs how Plaintiffs and Class Members must disclose the hazardous waste that they generate. Among other things, these regulations: established a cradle-to-grave tracking system utilizing a generator initiated tracking form; required management standards for segregation, packaging, labeling and marking, and storage of the medical waste; and established record keeping requirements and penalties that could be imposed for mismanagement.

ANSWER TO NO. 13: The allegations in paragraph 13 are legal conclusions to which no response is required. To the extent that a response is required, Stericycle denies the allegations in paragraph 13.

14. With the advent of MWTA, came third party regulated waste management service providers such as Stericycle.

ANSWER TO NO. 14: Stericycle admits the allegations in paragraph 14.

15. Stericycle was incorporated in 1989 on the heels of the enactment of MWTA. Stericycle's primary business consists of collecting and disposing of medical and biohazardous waste for its customers. Stericycle, together with its subsidiaries, provides medical waste management services, infection control, and pharmaceutical returns and related compliance

services. Its products and service offerings include medical waste management services; bio systems sharps management services that reduce the risk of needle sticks in hospitals; products for infection control; and pharmaceutical returns and product recall management services.

ANSWER TO NO. 15:  Stericycle admits that it was incorporated in 1989 and that its services include those described in paragraph 15. Stericycle denies the remaining allegations in paragraph 15.

16.     Stericycle's customers are hospitals, laboratories, physician practices, dental clinics, long-term care facilities, blood banks, veterinarians, and other organizations such as Plaintiffs and Class Members that generate medical waste or other potentially infectious material.

ANSWER TO NO. 16:  Stericycle admits that its customers include the types of entities described in paragraph 16.

17.     After the MTWA [sic] was enacted, growth in demand for medical waste disposal services was especially pronounced among small volume generators which did not have the scale to dispose of the waste in-house, and were faced with no alternative but to use third-parties to take their infectious wastes to approved treatment facilities. Reacting to these changes, beginning in 1988 and increasingly through the 1990s, many garbage and waste collection companies moved aggressively to extend the scope of their operations to enter the medical waste market. They sought to retrofit their equipment to handle the new regulations. The two largest of these were owned by Browning Ferris Industries ("BFI") and Waste Management, Inc. ("WMI"), the two dominant firms in municipal solid waste disposal.

ANSWER TO NO. 17:  Stericycle denies the allegations in paragraph 17 based on lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

4812-7932-0625 v1

18.     At the beginning of the 1990s the medical waste market appeared to be highly competitive, even in the face of an increasing regulatory environment. By the end of the decade, however, the market wound up becoming extremely consolidated, with only one company left with a "national" reach—Stericycle. Stericycle CEO Mark Miller boasted that "I think that what the solid waste companies ha[d]realized [wa]s, bundling [their trash and medical waste services to hospitals] doesn't work . . ." Both WMI and BFI exited the medical waste market in the 1990s, and Stericycle eventually purchased both companies' waste management assets tripling the size of Stericycle and eliminating its only other national competitors.

ANSWER TO NO. 18:  Stericycle admits that Stericycle purchased the assets of WMI and BFI. Stericycle denies the remaining characterizations and allegations in paragraph 18.

19.     National competitors were not Stericycle's only focus. Since 1993 it has completed approximately 299 acquisitions in the United States and internationally. By 2000, Stericycle was ranked 10th among the United States' fastest growing companies by Fortune Magazine.

ANSWER TO NO. 19:  Stericycle admits that since 1993 it has completed 299 acquisitions in the United States and internationally and admits that it was ranked 10th among the United States' fastest growing companies by Fortune Magazine. Stericycle denies the remaining allegations in paragraph 19.

20.     Its consolidation and industry dominance, however, has led to antitrust suits by private plaintiffs, states' attorneys' general, and the US Department of Justice –some of which are now settled.

ANSWER TO NO. 20:  Stericycle admits that it has been a defendant in antitrust suits, some of which have settled. Stericycle denies that any of the referenced suits had merit and denies the remaining allegations in paragraph 20.

4812-7932-0625 v1

21.     Today, Stericycle continues its market dominance and touts "[w]ithin the United States, [it] maintains the nation's largest network of medical waste transport vehicles, collection sites, and treatment facilities." It "serve[s] approximately 541,000 customers worldwide, of which approximately 16,500 are large-quantity generators, such as hospitals, blood banks and pharmaceutical manufacturers, and approximately 524,500 are small-quantity generators, such as outpatient clinics, medical and dental offices, long-term and sub-acute care facilities, veterinary offices, municipalities and retail pharmacies."

ANSWER TO NO. 21:  Stericycle admits that it maintains the nation's largest network of medical waste transport vehicles, collection sites, and treatment facilities. Stericycle admits that as of 2015, it served more than 600,000 customers worldwide. Stericycle admits that in its 2012 Annual Report, Stericycle reported that it served approximately 16,500 large-quantity generators, such as hospitals, blood banks and pharmaceutical manufacturers, and approximately 524,500 small-quantity generators, such as outpatient clinics, medical and dental offices, long-term and sub-acute care facilities, veterinary offices, municipalities and retail pharmacies. Stericycle denies the remaining allegations in paragraph 21.

22.     One of the consequences of Stericycle's rapid growth and dominance has been that its customers (and potential customers) have had little meaningful choice in selecting and negotiating arrangements with medical waste disposal companies and have been at the mercy of the terms of the agreements, no matter how oppressive and one-sided they may be. This scenario provides the backdrop of the complaint Plaintiffs bring about Stericycle's contract terms.

ANSWER TO NO. 22:  Stericycle denies the allegations in paragraph 22.

23.     Upon information and belief, Stericycle routinely requires its customers to execute a standardized agreement called the Stericycle Steri-Safe (SM) Service Agreement ("Service

Agreement"). Stericycle alone drafts the Service Agreements—the Service Agreements are standardized forms containing standardized terms governed by Illinois law. They are marked with pre-printed edition dates and version codes.

ANSWER TO NO. 23: Stericycle admits that at times it offers customers certain agreements called Steri-Safe agreements. Stericycle avers that an agreement's terms vary according to the individual customer. Stericycle denies the remaining allegations in paragraph 23.

24. Plaintiffs and each Class Member have executed a Service Agreement with Stericycle, whose terms are set forth in the Service Agreement.

ANSWER TO NO. 24: Stericycle admits that Plaintiffs have executed agreements with Stericycle. Stericycle denies the remaining allegations in paragraph 24 and avers that the provisions of the agreements vary by individual customer and contract.

25. The Service Agreement typically contains a first page identifying the customer; a contract number; and a description of "STERI-SAFE PROGRAM BENEFITS;" and price; and a second page containing block-print boilerplate language.

ANSWER TO NO. 25: Stericycle admits that its contracts typically identify the customer, a contract number, a description of services, and price. Stericycle denies the remaining allegations in paragraph 25 and avers that the provisions of its agreements vary by individual customer and contract.

26. The Service Agreement expressly states the charges that Stericycle is authorized to charge its customers. The price agreed to on the front page is fixed and is expressed as a flat periodic fee. The Service Agreement contains no indication or breakdown of how much of the purchase price is allocated for labor, energy, or regulatory requirements or other possible items of overhead.

ANSWER TO NO. 26:  Stericycle admits that its contracts state the amounts Stericycle will charge its customers. Stericycle denies the remaining allegations in paragraph 26 and avers that the provisions of the agreements, including charges and fees, vary by individual customer and contract.

27.     The front page of the Service Agreement also memorializes the number of stops per year Stericycle will make at the particular customer's location, the charge per additional stop, and the estimated yearly container loads Stericycle will pick up and dispose of from the customer's location.

ANSWER TO NO. 27:  Stericycle admits that certain of its contracts contain information about the number of stops per year, the charge per additional stop, and the estimated number of containers to be picked up yearly. Stericycle denies the remaining allegations in paragraph 27 and avers that the provisions of the agreements vary by individual customer and contract.

28.     On the second page, the Service Agreement states that it automatically renews for successive terms equal to the original Term (each an "Extension Term") unless either party has given sixty (60) days notice, in writing, during the six (6) month period prior to the renewal date of its desire to terminate the agreement.

ANSWER TO NO. 28:  Stericycle admits that certain of its contacts contain automatic renewal terms. Stericycle denies the remaining allegations in paragraph 28 and avers that the provisions of its agreements, including the lengths of extension terms and the notice periods, vary by individual customer and contract.

29.     In the block text of the third page of the Service Agreement, Stericycle requires its customers to agree that they will use no other waste disposal company or methods during any term of the agreement.

ANSWER TO NO. 29:  Stericycle admits that certain of its contracts contain exclusivity provisions.  Stericycle denies the remaining allegations in paragraph 29 and avers that the provisions of the agreements vary by individual customer and contract.

30.     Also, buried in the block text on the second page, the Service Agreement states: "Notwithstanding any limit to adjust the contract price, Stericycle reserves the right to further adjust the amounts payable and due to Stericycle for fees, including but not limited to environmental protection, compliance, waste management, or safety."

ANSWER TO NO. 30:  Stericycle admits that certain of its contracts contain the language quoted in paragraph 30. Stericycle denies the remaining allegations in paragraph 30 and avers that the provisions of the agreements vary by individual customer and contract.

31.     This provision represents Stericycle's automated price increases ("API") scheme under which, buried in the fine print on the second page of the Service Agreement, it arrogates to itself the unilateral right to alter, at its sole discretion, what appears on the first page of the Service Agreement to be a contract at a fixed price. "API" fees appear on invoices as fees for things like fuel, labor, insurance, or regulatory requirements such as "EPA."

ANSWER TO NO. 31:  Stericycle denies the allegations in paragraph 31.

32.     Upon information and belief, Stericycle systematically fails to disclose and failed to disclose to customers, including Plaintiffs and Class Members, that despite the fixed contract price to which they have agreed, its common policy and practice was and is to routinely increase the contract price by the implementation of an API and charge extra fees added to the apparently fixed monthly charge.

ANSWER TO NO. 32:  Stericycle denies the allegations in paragraph 32.

4812-7932-0625 v1

33.     Upon information and belief, Stericycle maintains an internal electronic financial accounting and reporting system that Stericycle programmed to track and apply the API-related fees automatically to customer accounts, including those of Plaintiffs and Class Members. From 2002 and continuing to present, Stericycle has imposed APIs of up to 18% during a calendar year on all Steri-Safe Service Agreement customers, including Plaintiffs and Class Members.

ANSWER TO NO. 33:  Stericycle admits that it maintained certain electronic financial accounting and reporting systems. Stericycle admits that certain customers have agreed to APIs, and that some of those APIs may be 18%. Stericycle denies the remaining allegations in paragraph 33.

34.     Upon information and belief, the API-related fees imposed on Plaintiffs and Class Members are not tied to actual cost increases, but are part of a systematic practice and policy that Stericycle regularly employs to generate revenues. The practice was in effect and known to Stericycle at the time it entered its Service Contracts with Plaintiffs and Class Members.

ANSWER TO NO. 34:  Stericycle denies the allegations in paragraph 34.

35.     The Service Agreement does not authorize this practice and policy. A reasonable consumer's reading of the Service Agreement would not indicate that the API policy as implemented by Stericycle is authorized and automatic.

ANSWER TO NO. 35:  Stericycle denies the allegations in paragraph 35.

36.     Stericycle knew but routinely failed to disclose to customers including Plaintiffs and Class Members: a) That despite the fixed contract price to which it had agreed, its policy and practice was and is to routinely increase the contract price by the implementation of an API and charge associated extra fees added to the apparently fixed monthly charge; and b) That the extra fees and charges were not tied to any particular cost increase imposed on Stericycle.

4812-7932-0625 v1

<u>ANSWER TO NO. 36</u>:  Stericycle denies the allegations in paragraph 36.

37.    The facts stated in ¶¶ 3 through 37 are material because they would likely affect a consumer's choice whether or not to enter into a contract with Stericycle or to pay the fees imposed on them; a reasonable buyer would have acted differently knowing the information; or it concerned the type of information upon which a reasonable buyer would be expected to rely in making a decision whether to purchase Stericycle's services.

<u>ANSWER TO NO. 37</u>:  Stericycle denies the allegations in paragraph 37.

38.    Plaintiff Murray Wellner, M.D., P.C. is a medical practice located in West Hartford, Connecticut. Plaintiff Harvey Hameroff, M.D. operates a medical practice located in West Hartford, Connecticut. These two plaintiffs share office space located at 10 Dale Street, West Hartford, Connecticut.

<u>ANSWER TO NO. 38</u>:  Stericycle admits the allegations in paragraph 38.

39.    Prior to 2006, these two Plaintiffs entered into a Service Agreement with Stericycle for the disposal of certain medical products. When these Plaintiffs entered into the Service Agreement, upon information and belief, the Service Agreement specified a flat Service Fee of less than $180.

<u>ANSWER TO NO. 39</u>:  Stericycle admits that it had contracts with Plaintiffs for disposal of medical products. Stericycle denies the remaining allegations of paragraph 39.

40.    Stericycle, however, unilaterally increased this flat Service Fee and by 2006 was charging $180.88, but had increased that fee by more than 14% by the end of 2006. By the end of 2007, Stericycle had unilaterally increased its flat Service Fee by more than 15% from the prior year. By the end of 2008, Stericycle had unilaterally increased its flat Service Fee by more than 45% from the prior year. By 2015, Stericycle had increased its flat Service Fee to $1,581.00.

4812-7932-0625 v1

Indeed, from 2006 through 2015, Stericycle had, on average, increased it flat Service Fee, from year to year, by more than 18%, with a total increase in fees from 2006 to 2015 of almost 89%. Stericycle never provided adequate explanation of substantiation for its unilateral increases.

ANSWER TO NO. 40:  Stericycle denies the allegations in paragraph 40.

41.     Stericycle has never explained to Plaintiffs how any of these increases were tied to a particular cost. Prior to and during the contractual relationship with Plaintiffs, Stericycle failed to disclose to Plaintiffs that despite the fixed contract price to which they had agreed, its policy and practice was and is to routinely increase the contract price by the implementation of an API and to charge associated extra fees added to the apparently fixed monthly charge. Stericycle also failed to disclose to Plaintiffs that the extra fees and charges were not tied to any particular cost increase imposed on Stericycle and were not authorized by the Service Agreement. Had Plaintiffs known these facts they would have never entered the Service Agreement with Stericycle and they would not have paid the extra charges.

ANSWER TO NO. 41:  Stericycle denies the allegations in paragraph 41.

42.     As set forth above, Stericycle routinely does not and did not disclose to Service Agreement customers, including Plaintiffs and Class Members, facts and information that are material and known to Stericycle at the time it enters the Service Agreements with them.

ANSWER TO NO. 42:  Stericycle denies the allegations in paragraph 42.

43.     Stericycle was and is in a superior position to know such facts and information, and such information is within Stericycle's exclusive knowledge and not accessible to Plaintiffs and Class Members. Without the foregoing information, consumers cannot determine just what costs and obligations they will be forced to undertake when they enter Service Agreements with

Stericycle. Moreover, because of Stericycle's market dominance, consumers have little meaningful choice in choosing a hazardous waste disposal company.

ANSWER TO NO. 43:  Stericycle denies the allegations in paragraph 43.

44.     Through its common course of conduct, Stericycle has knowingly employed or used means or methods of imposing fees that have caused customers, including Plaintiffs and Class Members, to be aggrieved and sustain ascertainable losses, in that, among others things, Stericycle systematically:

(a)     Made omissions of material facts;

(b)     Imposed on customers and concealed from them its API-related fee practices and policies described above that were in place and that it knew of when it entered Service Agreements with Plaintiffs and Class Members;

(c)     Engaged in a regular pattern and practice of entering fixed price contracts and then later charging additional fees ostensibly tied to an increase in its business costs when such was not the case and Stericycle knew or should have known it;

(d)     Imposed on customers and concealed from them API-related fee practices and policies that were not disclosed and not agreed to in their Service Agreements;

(e)     Failed to afford customers a meaningful way to reject the purported APIs and avoid paying unnecessary and unwanted fees; and

(f)     Caused Plaintiffs and Class Members to purchase Stericycle's services when they would not have done or would not have paid the prices for those services that they did, if they had known about Stericycle's API-related policies and practices.

ANSWER TO NO. 44:  Stericycle denies the allegations in paragraph 44.

45. Because of Defendant's course of conduct described above and because it uniformly failed to disclose material facts about their fee structure, consumers cannot and could not reasonably avoid their injuries, which are substantial.

ANSWER TO NO. 45: Stericycle denies the allegations in paragraph 45.

46. Defendant's course of conduct set out above is ongoing and adverse to the public interest and the policies underlying Connecticut consumer protection and common laws. Unless enjoined and restrained by an order of this Court, Defendant will continue to engage in the unlawful acts and practices set out herein. Such acts and conduct by Defendant has caused ascertainable losses and actual damages to customers, including Plaintiffs and Class Members, and unless enjoined by the Court, Defendant will continue to aggrieve and cause monetary loss to Plaintiffs, Class Members, and future customers.

ANSWER TO NO. 46: Stericycle denies the allegations in paragraph 46.

47. Plaintiffs seek to represent a class defined as all persons in the State of Connecticut who entered into the Standard Connecticut Contract for waste pick-up services with Defendant (the "Class"). Excluded from the Class are governmental entities, Stericycle, Stericycle's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

ANSWER TO NO. 47: Stericycle admits that Plaintiff seeks to represent a class of persons in the State of Connecticut. Stericycle denies that such a class is proper or should be certified and denies the remaining allegations in paragraph 47.

48. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands in the

State of Connecticut. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through Stericycle's records.

ANSWER TO NO. 48: Stericycle denies the allegations in paragraph 48.

49.　　Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether Stericycle: (i) represented that it would not charge Undisclosed Charges under the Standard Connecticut Contract, (ii) entered into the Standard Contract for a fixed price with Class members, (iii) breached the Standard Contract by charging Class members the Undisclosed Charges, and (iv) in so doing, violated the Connecticut Unfair Trade Practices Act ("CUTPA").

ANSWER TO NO. 49: Stericycle denies the allegations in paragraph 49.

50.　　The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs entered into the Standard Contract and were charged the Undisclosed Charges.

ANSWER TO NO. 50: Stericycle denies the allegations in paragraph 50.

51.　　Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

ANSWER TO NO. 51: Stericycle denies the allegations in paragraph 51.

52.　　The class mechanism is superior to all other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the

resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

ANSWER TO NO. 52:  Stericycle denies the allegations in paragraph 52.

**COUNT I**
**FOR BREACH OF CONTRACT**

53.     Plaintiffs hereby repeat, reallege and incorporate by reference the allegations contained in paragraphs 1 through 52 of this complaint as if fully set forth herein.

ANSWER TO NO. 53:  Stericycle hereby incorporates its responses by reference to all of the allegations contained in the preceding paragraphs of the complaint.

54.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

ANSWER TO NO. 54:  Stericycle admits that Plaintiffs bring this claim individually against Stericycle and purport to also bring it on behalf of a proposed class. Stericycle denies that this case is proper for certification as a class action.

55.     As discussed above, Plaintiffs and Class members entered into a legally binding Standard Contract with Stericycle, which is a 1 to 5-year fixed-price agreement calling for bi-weekly, monthly or quarterly waste pick-up.

4812-7932-0625 v1

<u>ANSWER TO NO. 55</u>:  Stericycle denies the allegations in paragraph 55.

56.     Stericycle made an offer to enter into an agreement by sending through the U.S. Postal Service a copy of the Standard Contract to Plaintiffs and Class members.

<u>ANSWER TO NO. 56</u>:  Stericycle denies the allegations in paragraph 56.

57.     Plaintiffs and Class members accepted the Standard Contract by signing it and returning it to Stericycle.

<u>ANSWER TO NO. 57</u>:  Stericycle denies the allegations in paragraph 57.

58.     The Standard Contract provided for Plaintiffs and Class members to receive a fixed price in return for a long-term commitment.

<u>ANSWER TO NO. 58</u>:  Stericycle denies the allegations in paragraph 58.

59.     Plaintiffs and Class members have performed all of their duties and obligations under the Standard Contract except those excused by Defendant's nonperformance.

<u>ANSWER TO NO. 59</u>:  Stericycle denies the allegations in paragraph 59.

60.     Defendant materially breached the aforementioned Standard Contract by depriving Plaintiffs and Class members of the benefit of their bargain by intentionally, purposefully, and/or negligently adding the undisclosed and/or unjustified charges to their bills.

<u>ANSWER TO NO. 60</u>:  Stericycle denies the allegations in paragraph 60.

61.     Defendant misrepresented to Plaintiffs and Class members that the undisclosed and/or unjustified charges were allowable under the Standard Contract because they correlated to escalating operating costs, though, in fact, they did not.

<u>ANSWER TO NO. 61</u>:  Stericycle denies the allegations in paragraph 61.

62.     Subject to additional information obtained through further investigation and/or discovery, Plaintiffs bring this class action against the Defendant pursuant to Rule 23(a), 23(b)(2)

19

and 23(b)(3), individually and as class representative on behalf of a class of individuals and entities, the "Class Members" or collectively the ""Class" defined as follows:

> All current and former Stericycle customers and/or persons in the State of Connecticut who entered into the Standard Connecticut Contract for waste pickup services with Defendant and that were charged fees under Stericycle's program. Excluded from the Class are governmental entities, Stericycle, Stericycle's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

ANSWER TO NO. 62: Stericycle admits that Plaintiff brings this action as a proposed class action. Stericycle denies that this case is a proper class action and denies the remaining allegations in paragraph 62.

63. This action has been brought and may be properly maintained as a class action for the following reasons:

> At this time, Plaintiffs do not know the exact number of Class Members, but this information is easily ascertainable from Defendant's records. Given the nature of the claims and standardized Service Agreements containing identifying information and account numbers and Stericycle's account-specific records; and the number of health providers in Connecticut, Plaintiffs believe that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions. Class Members can be notified of this class action via notice publication and/or U.S. mail addresses that Defendant or its agents and representatives should have in their business records.

ANSWER TO NO. 63: Stericycle denies the allegations in paragraph 63.

64. As a direct and proximate result of Defendant's breach of the Standard Contract, Plaintiffs and Class members have and will continue to suffer damages.

ANSWER TO NO. 64: Stericycle denies the allegations in paragraph 64.

4812-7932-0625 v1

## COUNT II
## CONNECTICUT UNFAIR TRADE PRACTICES ACT
## (CT. GEN STAT. §§ 42-110A *ET SEQ.*)

65.     Plaintiffs hereby repeat, reallege and incorporate by reference the allegations contained in paragraphs 1 through 64 of this complaint as if fully set forth herein.

ANSWER TO NO. 65:  Stericycle hereby incorporates its responses by reference to all of the allegations contained in all of the preceding paragraphs of the complaint.

66.     At all times relevant, Defendant has been engaged in trade and commerce as defined in the Connecticut Unfair Trade Practices Act. Defendant's actions were undertaken in the conduct of trade and commerce.

ANSWER TO NO. 66:  Paragraph 66 contains a legal conclusion to which no response is required. To the extent a response is required, Stericycle denies the allegations in paragraph 66.

67.     Defendant, at all relevant times, has engaged in unfair and deceptive trade practices by acts that include, without limitation, intentionally, knowingly and willfully: engaged in a scheme or artifice to systematically overcharge Plaintiffs and Class Members for services rendered despite the monthly service fee shown on Plaintiffs and Class Members' contract, repeatedly knowingly and willfully falsified, concealed, or covered up by trick or scheme, information regarding the actual cost of their services and made false, fictitious, or fraudulent statements or representations, knowing the same to contain false, fictitious, or fraudulent statements or entries with regard to the cost of their services and contract with Plaintiffs and Class Members; did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises; and enticing Plaintiffs and Class Members into a contract for service under the pretense of a monthly flat rate charge, but then systematically overcharging Plaintiffs and Class Members every single month using undisclosed fees.

21

ANSWER TO NO. 67:  Stericycle denies the allegations in paragraph 67.

68.     Plaintiff Murray Wellner, M.D., P.C. is a medical practice located in West Hartford, Connecticut. Plaintiff Harvey Hameroff, M.D. operates a medical practice located in West Hartford, Connecticut. These two plaintiffs share office space located at 10 Dale Street, West Hartford, Connecticut.

ANSWER TO NO. 68:  Stericycle admits that Plaintiffs Murray I. Wellner and Harvey Hameroff have a medical practice located at 10 Dale Street, West Hartford, Connecticut, 06107. Stericycle is without knowledge or information to answer the remaining allegations in paragraph 68 and therefore denies the same.

69.     Prior to 2006, these two Plaintiffs entered into a Service Agreement with Stericycle for the disposal of certain medical products. When these Plaintiffs entered into the Service Agreement, upon information and belief, the Service Agreement specified a flat Service Fee of less than $180.

ANSWER TO NO. 69:  Stericycle admits that it had contracts with Plaintiffs for disposal of medical products. Stericycle denies the remaining allegations of paragraph 69.

70.     Stericycle, however, unilaterally increased this flat Service Fee and by 2006 was charging $180.88, but had increased that fee by more than 14% by the end of 2006. By the end of 2007, Stericycle had unilaterally increased its flat Service Fee by more than 15% from the prior year. By the end of 2008, Stericycle had unilaterally increased its flat Service Fee by more than 45% from the prior year. By 2015, Stericycle had increased it flat Service Fee to $1,581.00. Indeed, from 2006 through 2015, Stericycle had, on average, increased it flat Service Fee, from year to year, by more than 18%, with a total increase in fees from 2006 to 2015 of almost 89%. Stericycle never provided adequate explanation of substantiation for its unilateral increases.

ANSWER TO NO. 70:  Stericycle denies the allegations in paragraph 70.

71.     Stericycle has never explained to Plaintiffs how any of these increases were tied to a particular cost. Prior to and during the contractual relationship with Plaintiffs, Stericycle failed to disclose to Plaintiffs that despite the fixed contract price to which they had agreed, its policy and practice was and is to routinely increase the contract price by the implementation of an API and to charge associated extra fees added to the apparently fixed monthly charge. Stericycle also failed to disclose to Plaintiffs that the extra fees and charges were not tied to any particular cost increase imposed on Stericycle and were not authorized by the Service Agreement. Had Plaintiffs known these facts they would have never entered the Service Agreement with Stericycle and they would not have paid the extra charges.

ANSWER TO NO. 71:  Stericycle denies the allegations in paragraph 71.

72.     These acts were and are part of the regular and routine way the Defendant, conducted and conducts its business.

ANSWER TO NO. 72:  Stericycle denies the allegations in paragraph 72

73.     Defendant's conduct constitutes unethical, illegal, improper and fraudulent conduct.

ANSWER TO NO. 72:  Stericycle denies the allegations in paragraph 73.

74.     Defendant's conduct was done with deception and for the commercial benefit of Defendant and to the unfair detriment of Plaintiffs and Class Members.

ANSWER TO NO. 74:  Stericycle denies the allegations in paragraph 74.

75.     Defendant's actions are unfair and deceptive, offend public policy and are immoral, unscrupulous, unethical, offend traditional concepts of fairness in violation of the Connecticut

Unfair Trade Practices Act, has caused substantial injury to Plaintiffs and Class Members, and Plaintiffs and Class Members suffered irreparable harm and other damages as a result.

ANSWER TO NO 75:  Stericycle denies the allegations in paragraph 75.

76.     Subject to additional information obtained through further investigation and/or discovery, Plaintiffs bring this class action against the Defendant pursuant to Rule 23(a), 23(b)(2) and 23(b)(3), individually and as class representative on behalf of a class of individuals and entities, the "Class Members" or collectively the ""Class" defined as follows:

> All current and former Stericycle customers and/or persons in the State of Connecticut who entered into the Standard Connecticut Contract for waste pickup services with Defendant and that were charged fees under Stericycle's program. Excluded from the Class are governmental entities, Stericycle, Stericycle's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

ANSWER TO NO. 76:  Stericycle admits that Plaintiffs bring this action as a proposed class action. Stericycle denies that this case is a proper class action and denies the remaining allegations in paragraph 76.

77.     This action has been brought and may be properly maintained as a class action for the following reasons:

> At this time, Plaintiffs do not know the exact number of Class Members, but this information is easily ascertainable from Defendant's records. Given the nature of the claims and standardized Service Agreements containing identifying information and account numbers and Stericycle's account-specific records; and the number of health providers in Connecticut, Plaintiffs believe that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions. Class Members can be notified of this class action via notice publication and/or U.S. mail addresses that Defendant or its agents and representatives should have in their business records.

ANSWER TO NO. 77:  Stericycle denies the allegations in paragraph 77.

78.      As a direct and proximate result of Defendant's breach of the Standard Contract, Plaintiffs and Class members have and will continue to suffer damages.

ANSWER TO NO. 78:  Stericycle denies the allegations in paragraph 78.

79.      In accordance with the Connecticut General Statutes, a copy of this complaint will be mailed to the Attorney General and the Commissioner of Consumer Protection.

ANSWER TO NO. 79:  Stericycle

80.      Plaintiffs hereby request a trial by jury on all claims subject to trial by jury.

ANSWER TO NO. 80:  Stericycle admits that Plaintiffs request a trial by jury. Stericycle denies that this case should be tried by jury.

WHEREFORE, PLAINTIFFS DEMAND:

(a)      Certification of the Class alleged above pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as representative of the Class and designating their counsel as counsel for the Class

ANSWER:  Stericycle denies that the class should be certified, denies the Plaintiffs should be class representatives and denies that Plaintiffs' counsel should serve as counsel for the class. Stericycle denies the remaining allegations in Plaintiffs' demand.

**AFFIRMATIVE DEFENSES**

Stericycle's affirmative defenses to the Complaint are set forth below.  By setting forth the following allegations and defenses, however, Stericycle does not assume the burden of proof on matters and issues other than those on which it has the burden of proof as a matter of law.

4812-7932-0625 v1

Moreover, a class has not been certified in this matter, and Stericycle believes a class should not be certified.

## FIRST AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, because the allegations supporting certain of the Causes of Action asserted in the Complaint fail to state a claim upon which relief may be granted as required by Federal Rule of Civil Procedure 12(b). For example, Counts II fails to state a claim because Plaintiffs' allegations in that count are grounded in fraud and Plaintiffs have failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

## SECOND AFFIRMATIVE DEFENSE

The claims of certain members of the proposed class under Count I are barred, in whole or in part, because those members of the proposed class do not have contracts with Stericycle and thus Stericycle could not have breached any contractual term.

## THIRD AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, because, on information and belief, Plaintiffs and certain members of the proposed class have brought causes of action in a forum and/or pursuant to a state law that violate the forum-selection clause and/or choice of law provision contained in the applicable contract between the member of the proposed class and Stericycle.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation. Specifically, with respect to Count I, Plaintiffs entered into contracts with Stericycle and Stericycle allegedly breached its contracts with them by imposing allegedly improper price increases prior to the applicable six-year statute of limitations under Conn. Gen. Stat. §52-576. With respect to Count

26

II, the cause of action accrued prior to the applicable statute of limitation, which is three years pursuant to Conn. Gen. Stat. § 42-110g(f), and there is no basis for tolling of those statutes of limitation.

## FIFTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, because, on information and belief, Plaintiffs and certain members of the proposed class have brought causes of action in a forum and/or pursuant to a state law that violates the forum-selection clause and/or choice of law provision contained in the applicable contract between the member of the proposed class and Stericycle.

## SIXTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, by the doctrine of accord and satisfaction because, on information and belief, Plaintiffs and certain members of the proposed class submitted payments to Stericycle at various times pursuant to a shared intent to settle a bona fide dispute over an unliquidated amount owed to Stericycle pursuant to allegedly improper price increases and/or surcharges, and Stericycle accepted those payments as full satisfaction of the contractual obligations of those members of the proposed class.

## SEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, because, on information and belief, a novation occurred when Plaintiffs and certain members of the proposed class entered into new, valid, contracts with Stericycle by mutual agreement that contained new pricing terms, and which extinguished their prior contract with Stericycle and any prior debt obligations owed to Stericycle thereunder.

4812-7932-0625 v1

## EIGHTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, by the doctrine of estoppel because, at various times, Plaintiffs and/or the members of the proposed class intentionally paid outstanding invoices owed to Stericycle knowing that they contained allegedly improper price increases and/or surcharges, Stericycle reasonably relied upon those payments as evidence of the consent of Plaintiffs and members of the proposed class to the price increases and/or surcharges and, as a result, Stericycle relied to its detriment and continued to provide services to Plaintiffs and the members of the proposed class and incur the costs associated with those services pursuant to their contracts.

## NINTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, because at various times Plaintiffs and/or the members of the proposed class intentionally and knowingly waived their rights to contest the allegedly improper price increases and/or surcharges either when they contacted Stericycle to discuss the allegedly improper price increases and/or surcharges and thereafter agreed to the existing or new price terms in their contracts, or when they continued to pay their invoices to Stericycle and demand that Stericycle continue to provide services to them pursuant to the contract without disputing the allegedly improper price increases and/or surcharges.

## TENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, by the doctrine of laches, because at various times Plaintiffs and/or the members of the proposed class received invoices from Stericycle knowing that they contained allegedly improper price increases and/or surcharges and they engaged in undue delay and an unreasonable lack of diligence by failing to take any action to dispute the allegedly improper price increases and/or

surcharges and, instead, continued to pay their invoices and acquiesce to the new prices for a significant period of time, which prejudiced Stericycle by leading Stericycle to continue to provide services to Plaintiffs and the members of the proposed class and incur the costs associated with those services with the expectation that Plaintiffs and the members of the proposed class would continue to pay the invoiced price for those services pursuant to their contracts with Stericycle.

## ELEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, because Stericycle provided services for the benefit of Plaintiffs and/or the members of the proposed class pursuant to their contracts, and, to the extent Stericycle's invoices contained allegedly improper price increases and surcharges, Plaintiffs and the members of the proposed class ratified Stericycle's services and pricing by either expressly ratifying Stericycle's conduct or implicitly acquiescing in and failing to repudiate Stericycle's conduct.

## TWELFTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, by the voluntary payment doctrine because, at various times, Plaintiffs and/or the members of the proposed class received invoices demanding payment of amounts due to Stericycle for its services that included allegedly improper price increases and/or surcharges, and Plaintiffs and/or the members of the proposed class voluntarily paid those invoiced amounts due to Stericycle under Stericycle's claim of right to payment for the services it provided with full knowledge of the facts surrounding the claim of right to payment and without compulsion or duress.

## THIRTEENTH AFFIRMATIVE DEFENSE

The claims of certain members of the proposed class are barred, in whole or in part, because they previously entered into a valid agreement with Stericycle whereby they intentionally and

4812-7932-0625 v1

knowingly released Stericycle from liability for any claimed damages due to allegedly improper fees or price increases.

## FOURTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, because Plaintiffs and the members of the proposed class failed to mitigate their own damages when they voluntarily paid Stericycle for invoiced amounts due that included allegedly improper price increases and/or surcharges without (i) attempting to have the charges reduced by contacting Stericycle to dispute or negotiate the allegedly improper price increases and/or surcharges, (ii) without attempting to terminate their contract with Stericycle to avoid the allegedly improper charges, and/or (iii) without attempting to obtain substitute arrangements for services from someone other than Stericycle.

## FIFTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred because certain of the contracts between Plaintiffs, members of the proposed class, and Stericycle contain a provision requiring all disputes between the parties be submitted to arbitration.

## SIXTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or the members of the proposed class are barred, in whole or in part, because Plaintiffs and/or the members of the proposed class cannot meet their burden of proving that any acts, conduct, statements, or omissions on the part of Stericycle misled them or were likely to mislead them, as the amount that Plaintiffs and the members of the proposed class were being billed was clearly stated on each invoice.

4812-7932-0625 v1

## SEVENTEENTH AFFIRMATIVE DEFENSE

Stericycle is informed and believes, and on that basis alleges, that the claim for damages and/or other monetary recovery by Plaintiffs and/or members of the proposed class must be offset and reduced by any considerations or other discounts that they received from Stericycle.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' action is not properly maintained as a class action because the requirements under federal law for class certification have not been met and because certification of the proposed class would result in a denial of due process to Stericycle as well as to members of the proposed class. By way of example, Plaintiffs are not adequate class representatives or typical of the proposed class to the extent that Plaintiffs would be subject to unique defenses *vis-à-vis* some or all of the claims they have asserted. In addition, common questions of law and fact do not predominate over individual questions, including but not limited to, questions regarding the terms of the individual contracts with the members of the proposed class, whether those terms were breached by Stericycle and/or whether any member of the proposed class paid invoices including the allegedly improper charges, thus subjecting them to a voluntary payment/waiver defense.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs are not an adequate class representative because any injury they may have suffered is not indicative or representative of the class Plaintiffs purports to represent.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims under the Connecticut Unfair Trade Practices Act are barred, in whole or in part, by the failure of Plaintiffs to provide notice of the action to the Attorney General and the Commissioner of Consumer Protection.

4812-7932-0625 v1

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Stericycle has insufficient knowledge or information upon which to form a belief as to whether it may have additional affirmative defenses that govern the claim asserted by Plaintiffs and on behalf of persons claimed to be members of the proposed class. Stericycle, therefore, reserves the right to raise additional defenses as appropriate, including but not limited to those set forth in Rule 12(b) and 8(c) of the Rules of Civil Procedure, which discovery may reveal are applicable.

## **PRAYER FOR RELIEF**

WHEREFORE, Stericycle prays that Plaintiffs' Complaint and each and every cause of action alleged therein be dismissed with prejudice, that it be awarded its costs and attorneys' fees incurred herein and the Court award such other and further relief as it deems just in the premises.

Respectfully submitted this 24th day of May, 2016.

/s/ Raymond J. Etcheverry
Raymond J. Etcheverry
Nicole G. Farrell
Cory D. Sinclair
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Tel: 801.532.1234
Fax: 801.536.6111

4812-7932-0625 v1